### 19585

Robert Clyde GUINYARD, Appellant, v. STATE of South Carolina et al., Respondents

(195 S. E. (2d) 392)

*Jasper M. Cureton, Esq.,* of Columbia, *for Appellant,*

222

*Messrs. Daniel R. McLeod, Atty. Gen., Emmet H. Clair,* and *Robert M. Ariail, Asst. Attys. Gen.,* of Columbia, *for Respondents,*

March 14, 1973.

Lewis, Justice:

This is an appeal from an order of the lower court denying appellant's petition for relief from a guilty plea entered to a violation of Section 32-1030 of the 1962 Code of Laws.

Appellant was indicted at the April 1971 term of the General Sessions Court for Richland County for rape and the violation of Code Section 32-1030. This statute makes it unlawful for any person to have sexual intercourse with

a patient or trainee of any State mental health facility, and is as follows:

"Any person having sexual intercourse with a patient or trainee of any State mental health facility, whether the patient or trainee is within the facility or unlawfully away from the facility, shall be guilty of a misdemeanor and, upon conviction, shall be punished by hard labor on the county chain gang or in the State Penitentiary for a period not exceeding twenty years, within the discretion of the court."

Appellant, represented by retained counsel, entered a plea of guilty to the violation of Section 32-1030 and received a sentence of three (3) years. He thereafter, on October 13, 1971 filed, *pro se,* a petition for relief under the Uniform Post Conviction Procedure Act (Section 17-601 *et seq.,* Supplement to 1962 Code), alleging that he was being illegally confined because, at the time he committed the act, he had no knowledge that the lady molested was a patient of the State Hospital and that his sentence was illegal because influenced by prejudice against black people.

On April 19, 1972, the respondent, State of South Carolina, filed a return and a motion to summarily dismiss appellant's petition, since under the trial record no useful purpose could be served by a hearing. This was followed by a reply by appellant to the return and motion of respondent, in which appellant interpreted his petition for relief as asserting that Section 32-1030, under which his plea was entered, was unconstitutional as violative of the due process clause of the United States Constitution. Thereafter, the lower court dismissed appellant's petition, holding that his plea of guilty was knowingly and voluntarily entered and that he had, by entering such plea, waived his right to assert the present grounds for relief. At the request of appellant, counsel was appointed to represent him and this appeal followed.

Appellant presents two questions for decision in this appeal: (1) whether his application for relief should have been granted because of the failure of the State to timely respond thereto; and (2) whether the statute under which his plea of guilty was entered is unconstitutional.

At the outset, appellant contends that his application for relief should have been granted by the lower court because of the failure of the State to respond thereto within thirty days after the application was docketed, as provided in Code Section 17-606. The record shows that the application of appellant was filed on October 13, 1971 and response by the State was not filed until April 19, 1972.

Section 17-606 provides that "(a) Within thirty days after the docketing of the application, or within any further time the court may fix, the State shall respond by answer or by motion which may be supported by affidavits." In addition, this section specifically grants to the trial court authority to extend the time for the filing of any pleading. Compliance with the thirty day time limit prescribed by the statute is, therefore, not mandatory, as contended by appellant, but discretionary with the trial court.

In any event, the question now raised cannot be considered, since the record fails to disclose that objection was made in the lower court to the failure of the State to file its response within the statutory time limit. Such objection cannot be made for the first time on appeal.

The remaining issue for determination concerns the constitutionality of the statute under which appellant was indicted. He contends that Section 32-1030 is so vague, indefinite and ambiguous as to afford insufficient notice of the charge to be met by an accused and, therefore, deprives him of the constitutional guaranty of due process.

The test for determining whether the statute is unconstitutionally vague was set forth in *State v. Albert,* 257 S. C. 131, 184 S. E. (2d) 605:

"The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give a reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional."

The statute is neither vague nor ambiguous. It clearly defines the offense in language which gives notice of the prohibited conduct. The prohibited conduct consists of "having sexual intercourse with a patient or trainee of any State mental health facility." The language is plain and unambiguous, and men of common intelligence would have no difficulty in determining its meaning. All that a person need do to avoid the penalties of the statute is simply to refrain from sexual intercourse with a patient of a State mental health facility.

Appellant argues however that the statute is unconstitutionally vague and indefinite in that it fails to include knowledge of the status of the person molested, as an element of the offense. He contends that one may be convicted of the offense even though he has no knowledge of the fact that the victim is a patient of a mental facility. Especially is this true, he argues, since the prohibited class includes a patient or trainee who is unlawfully away from the mental facility.

The Legislature has the power, within constitutional limits, to define and punish crimes. 22 C. J. S. Criminal Law § 13; 21 Am. Jur. (2d), Criminal Law, Section 14; *Singletary v. Wilson,* 191 S. C. 153, 3 S. E. (2d) 802.

The power of the Legislature to declare what acts shall constitute crimes ordinarily includes the power to make the commission of the act criminal without regard to the intent or knowledge of the accused. This principle was recognized in *State v. Manos,* 179 S. C. 45, 183 S. E. 582, where the following from 16 C. J. S. 76 was quoted with approval:

"As a general rule where an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when not in terms required. The legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and if such legislative intention appears the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, although not quite universally, applied in the enforcement of statutes passed in aid of the police power of the state, where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt."

Therefore, whether knowledge and intent are necessary elements of a statutory crime must be determined from the language of the statute, construed in the light of its purpose and design.

It is readily apparent that the statute in question was enacted 'in the exercise of the police power to provide protection for those persons whose mental condition required treatment and confinement, as a patient or trainee, at a State mental facility. In prohibiting sexual intercourse with any member of the class, neither lack of consent, intent, nor knowledge were made elements of the offense. Under the terms of the statute, if a person engages

in the prohibited conduct with a patient or trainee of a mental facility, whether the status of the person molested, as a patient or trainee, is known or unknown to the accused, the offense is committed.

The State correctly argues that the same rationale which constitutionally supports the protection accorded to those tender in years is here properly employed to protect those individuals whose mental faculties are impaired to the extent of requiring institutional treatment and care. The action of the Legislature in failing to make knowledge of the institutional status of the person molested an element of the present offense is in harmony with the rule adopted by practically all of the courts that, under a charge of statutory rape, the honest belief of the accused that the complainant was of the age of consent when in fact she was not constitutes no defense. Annotation: 8 A. L. R. (3d) 1100.

An analogous situation is also found in the decisions which hold that a mistaken belief in the validity of a divorce is no defense to the statutory charge of adultery. *State v. Westmoreland,* 76 S. C. 145, 56 S. E. 673, 8 L. R. A., N. S., 842; Annotation: 56 A. L. R. (2d) 915, 919.

The Legislature has determined, in effect, that persons who engage in the prohibited conduct do so at their peril and will not be heard to plead in defense that they were ignorant of the fact that the person molested was a patient of a mental facility. This was within the constitutional powers of the Legislature. As stated in *Williams v. North Carolina,* 325 U. S. 226, 238, 65 S. Ct. 1092, 1099, 89 L. Ed. 1577, 1586, 157 A. L. R. 1366:

"The objection that punishment of a person for an act as a crime when ignorant of the facts making it so, involves a denial of due process of law has more than once been overruled. In vindicating its public policy and particularly one so important as that bearing upon the integrity of family life, a State in punishing particular acts may provide that 'he who shall do them shall do them at his peril and

will not be heard to plead in defence good faith or ignorance.' "

The contention of appellant that the statute in question deprives him of due process of law is without merit.

The judgment is accordingly affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.